**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**KEVIN EUGENE OWEN**                                                              **PETITIONER**

**v.**                                                              **CASE NO. 2:11cv216-KS-MTP**

**PRESTON SULLIVAN, JR.**                                                              **RESPONDENT**

<u>**REPORT AND RECOMMENDATION**</u>

BEFORE THE COURT is the *pro se* and *in forma pauperis* Petition [1] of Kevin Owen for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed his Response [8] on January

20, 2012. Having considered the submissions of the parties and the applicable law, the undersigned

recommends that the Petition [1] be denied.

<u>**BACKGROUND**</u>

At approximately 1:00 a.m. on May 2, 2007, a Circle K gas station in Hattiesburg,

Mississippi, was robbed at gunpoint.  Soon after, Petitioner Kevin Owen was identified by the

victim,  arrested and convicted of armed robbery in the Circuit Court of Forrest County, Mississippi

on July 24, 2008.[1] He was sentenced to a twenty-five (25) year term and ordered to pay a $5,000

fine, plus court costs.[2] The facts of this case will be provided more fully as necessary in the analysis

of Owen's Petition [1].[3]

Following his conviction, Owen filed a direct appeal of his conviction and sentence to the

Mississippi Supreme Court, raising the following issues:

---

[1]*See* State Court Record ("SCR") [9-1] at 88-89.

[2]*Id.* at 90.

[3]The facts are also set forth more fully in the Mississippi Court of Appeals decision
affirming Owen's conviction. *Owen v. State*, 43 So. 3d 1146, 1148-50 (Miss. Ct. App. 2011).

(1)     The trial court misapplied the law when denying the motion to suppress the prejudicial show-up identification because the identification was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law.

(2)     The trial court misapplied the law in finding Charles Street was an unavailable witness, thus violating Kevin's constitutional right to confront his accusers.[4]

The Mississippi Court of Appeal affirmed the judgment of the Circuit Court in a written opinion.[5]

Owen's motion for rehearing was denied on June 15, 2010, and the Mississippi Supreme Court denied certiorari review on September 16, 2010.  Owen filed an Application to Proceed in Trial Court with Motion to Vacate Conviction in Mississippi Supreme Court on May 20, 2011, raising the following issues:

(1)     Whether Petitioner was denied effective assistance of counsel at trial where counsel failed to call or present a favorable witness to discredit the prosecution's theory of when Petitioner had a tattoo put on his left forearm.

(2)     Whether the trial court violated Petitioner's due process rights when it excluded potential corroborating evidence from the jury during trial and deliberations.

(3)     Whether the Petitioner's conviction was contrary to the weight of the evidence.

(4)     Whether Petitioner was denied his right to a fair trial where the prosecutor created unjust prejudice throughout trial by the use of prosecutorial misconduct.

(5)     Whether Petitioner's constitutional right to counsel was violated when the state confronted Petitioner without counsel present after Petitioner's right to counsel had attached.

---

[4]*See* Brief for the Appellant, SCR [9] Vol. 6  at 27

[5]*Owen,* 43 So. 3d at 1146.

2

     (6)     Whether the trial court denied Petitioner's right to a fair trial where defense counsel was prevented by the court from fully arguing facts during trial, which ultimately would have benefitted Petitioner throughout the appellate process.[6]

The Mississippi Supreme Court dismissed the application, finding that the petition "fail[ed] to make a substantial showing of the denial of a state or federal right" and that Owen's ineffective assistance of counsel claim failed to meet the standard imposed by *Strickland v. Washington*, 466 U.S. 668 (1984).[7]

     Owen filed the instant petition on October 21, 2011, asserting the following grounds for habeas relief:

| | |
|---|---|
| Ground One: | Whether trial court erred in denying Owen's motion to suppress the prejudicial show-up identification |
| Ground Two | Whether Petitioner was denied assistance of counsel at every "critical stage" of the proceedings against him |
| Ground Three | Whether trial court erred in withholding properly received evidence from the jury during deliberations |
| Ground Four | Whether trial court erred in receiving the pre-recorded unsworn statement of Charles Street into evidence without benefit of cross examination |
| Ground Five | Whether appellate counsel was ineffective in her failure to raise properly preserved key issues on direct appeal |
| Ground Six | Whether cumulative effect of the trial judge's rulings on key issues prevented Petitioner from receiving a |

---

[6]*See* Application for Leave to Proceed in the Trial Court with Motion to Vacate Conviction, SCR [9-8] at 5-6; Memorandum Brief, *id.* at 32-105.

[7]*See* State Court Order [8-2].

constitutionally fair trial[8]

## **ANALYSIS**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires the exhaustion of a claim in state court before a federal court may consider it. 28 U.S.C. § 2254(b)(1)(A). Prisoners must "give state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," thus, state courts must have "one full opportunity to resolve any constitutional issues." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Orman v. Cain*, 228 F.3d 616, 620 n.6 (5th Cir. 2000) (holding that a petitioner satisfies the exhaustion requirement via the pursuit of his claims through state courts either by direct appeal or by post-conviction proceedings).

To the extent Owen's claims were adjudicated on the merits in state court, Section 2254(d) provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Federal courts review pure questions of law, as well as mixed questions of law and fact, under subsection (d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). For purposes of subsection (d)(1) analysis, "unreasonable" does not equate with "incorrect," *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004), nor may a federal court grant habeas relief based on a mere

---

[8]Brief for Petitioner [1] at 7.

disagreement with the state court decision. *Williams v. Cain*, 125 F.3d 269, 276-77 (5th Cir. 1997). Pure questions of fact are reviewed under subsection (d)(2). *Corwin v. Johnson,* 150 F.3d 467, 471 (5th Cir. 1998). Determination of a factual issue made by a state court is entitled to a presumption of correctness which the petitioner has the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Schriro v. Landrigan*, 550 U.S. 465, 474-74 (2007). Federal courts may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

Grounds One, Three and Four in Owen's Petition were considered and rejected by the Mississippi Court of Appeals and the Mississippi Supreme Court. Grounds Two, Five and Six are raised here for the first time and were not considered by any Mississippi court. As discussed below, Owen is procedurally barred from raising these additional grounds, and cannot clear the bar to federal habeas review by bringing his other claims within the narrow exceptions provided by 28 U.S.C. § 2254(d).

### *Unexhausted Claims*

In Ground Two, Owen alleges that he was denied counsel at a show-up identification on the night of the robbery in violation of his constitution rights, as he claims that his Sixth Amendment right to counsel had attached.[9] In Ground Five, Owen contends that he was not afforded effective assistance of appellate counsel, as appellate counsel did not argue the issue of the show up identification or the exclusion of certain evidence on Owen's direct appeal.[10] In Ground Six, Owen alleges that the cumulative effect of the trial judge's rulings on key evidentiary issues combined to

---

[9]*See* Petition [1] at 10.

[10]*Id.* at 29.

prevent him from receiving a fair trial.[11]

Owen did not pursue these particular claims in his direct appeal or his post-conviction proceedings in state court, although he had the opportunity to do so. By failing to seek review of these issues in earlier proceedings, Owen did not "give the state courts one full opportunity to resolve any constitutional issues," and thus his claims are unexhausted. *O'Sullivan*, 526 U.S. at 845; *see also* 20 U.S.C. § 2254(c) (stating that an applicant "shall not be deemed to have exhausted the remedies available in the courts of that State, within the meaning of this section, if he ha[d] the right under the law of the State to raise, by any available procedure, the question presented.").

Because some of Owen's claims are unexhausted and others are not, he has brought what is known as a "mixed petition." The United States Supreme Court held in *Rhines v. Weber* that a court has the power to grant a stay and abeyance (so that a petitioner can properly exhaust his claims to satisfy the requirements of the AEDPA) only in limited circumstances, where there is "good cause" shown for the petitioner's failure to exhaust his claims in state court. 544 U.S. 269, 274 (2005).  In the event good cause is shown, a stay may  not be granted if the petitioner's unexhausted claims are clearly without merit. *Id.* In the present case, Owen gives no valid reason for his failure to raise these additional grounds in state court. Therefore, Grounds Two, Five and Six of Owen's Petitioner are procedurally barred.

***Claims Considered on the Merits***

---

[11]*Id.* at 34.

### Show-Up Identification

Petitioner contends that a show up identification,[12] made by a Circle K employee minutes after the robbery, was so suggestive as to be unreliable, and should not have been received into evidence at trial. Specifically, he argues that the show up identification in this case violated his right to due process, citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

The facts surrounding the show up identification are as follows. State witness Paul Holmes was working the night shift at the Circle K at time of the robbery. He testified at trial that a man entered the store, pointed a small-caliber handgun at him, and demanded money. He testified that the man was wearing a white shirt, a pair of blue shorts with black trim, and white tennis shoes with red soles. Holmes also testified that the man was white, and had a T-shirt pulled up to cover his face. Holmes stated that although he did not get a complete view of the perpetrator's face, he clearly saw his eyes. Holmes did not recall the perpetrator having any tattoos on his arms. According to Holmes, he gave the man approximately sixty-six dollars, and then the perpetrator quickly left the store. Homes immediately called police and officers arrived within a few minutes. The Circle K had a surveillance system which had captured the robbery, and Holmes gave the recording to the officers. Holmes and the officers watched the recording several times before the officers left the store.[13]

Officer Earthy Donald, an officer with the Hattiesburg Police Department, testified that he responded to the Circle K after receiving a call concerning the robbery. Officer Donald stated that

---

[12]A "show up" identification, as opposed to a "line up" identification is one where a witness is confronted by and identifies a single individual, usually within a short time of the initial observation.

[13]*See* SCR [9-2] at 143-158 ; [9-3] at 1-8.

he searched the area in case the perpetrator was nearby, and that he saw a white male in a wrinkled gray T-shirt, light blue shorts with dark trim, and red and white sneakers. Officer Donald made contact with the man, and learned that his name was Kevin Owen. Officer Donald then went to the Circle K and viewed the surveillance video, where he and the other officers concluded that Owen matched the appearance of the perpetrator in the video. The officers located Owen, placed him under arrest and brought him back to the Circle K. The officers then brought Holmes out of the store, where he identified Owen, who was sitting in the back of the patrol car, as the person who had committed the robbery. No more than thirty minutes had elapsed from the time of the robbery to time of the identification.[14] Prior to his trial, Owen filed a motion to suppress.[15] The trial court denied Owen's motion, and the case proceeded to trial.

This Court's review of this issue is limited to determining whether the state court's ruling involved an unreasonable application of clearly established federal law. The admissibility of evidence is matter of state law, *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989), and the Supreme Court has held that federal habeas corpus relief will not be granted for errors on those grounds. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious to render the entire trial fundamentally unfair." *Edwards*, 882 F.2d at 164. In short, habeas relief will be granted only where a conviction has been obtained in violation of federal law or a specific right protected by the Constitution. 28 U.S.C. § 2254(a); *Smith v. Phillips*, 455 U.S.

---

[14]*Id.* at 43-55.

[15]Motion to Suppress Identification Evidence, State Court Record [9-1] Vol. 1 at 55; Amended Motion to Suppress Identification Evidence, *Id.* at 59.

209 (1982). An erroneous state evidentiary ruling may serve as a basis for federal relief only if "the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987).

The Mississippi Court of Appeals reviewed this issue on Owen's direct appeal, applying the holding of *Neil,* 409 U.S. at 199-200, where the Supreme Court established a "totality of the circumstances" test to consider whether a witness's identification of a defendant was reliable even though the confrontation procedure was suggestive. *Id.* at 199. The factors to be considered in evaluating the soundness of a suggestive confrontation procedure are as follows: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.* at 199-200.

Having reviewed the application of this test by the Mississippi Court of Appeals, the undersigned finds that the state court's decision was neither contrary to nor an unreasonable application of the factors set forth in *Niel*. Owen argues that Holmes did not have an adequate opportunity to view the perpetrator during the robbery. The appeals court reasoned that although Holmes testified that the perpetrator was not in the store for a long period of time, he watched the video of the robbery several times before Owens was brought to the Circle K by police. *Owen*, 43 So. 3d at 1151. Holmes's identification was thus based on the observation of Owen during the robbery as well as reviewing the surveillance video. *Id.* Holmes's testimony at the suppression hearing, which gave an accurate description of Owen, was also consistent with his testimony at trial.

9

*Id.* The appeals court also stated that Holmes's testimony led them "to conclude that he paid close attention to the perpetrator prior to making the identification." *Id.*

Evaluating all of the factors within the "totality of the circumstances," the Mississippi Court of Appeals concluded that the "there is nothing in the record to suggest that Holmes was not sure of his identification of Owen." *Id.* No basis exists to disturb this conclusion. An identification made while the defendant is sitting in or beside a police patrol car  is not alone dispositive of the identification's reliability.  *See United States v. Guidry*, 406 F. 3d 314, 319 (5th Cir. 2005); *see also Mixon v. King*, 2009 WL 2619013 at *10-11 (S.D. Miss. Aug. 24, 2009) (holding that a show up identification was within constitutional bounds where the defendant was identified while sitting in the back of a patrol car, but the witness had ample opportunity to view the defendant, gave several consistent and accurate descriptions and identified the perpetrator within three hours of the crime). The undersigned finds that decision of the state court on this issue was neither contrary to nor an unreasonable application of federal law. Accordingly, this issue does not provide the basis for habeas relief.

### Recorded Testimony of Charles Street

Owen also alleges that the trial court erred in receiving the pre-recorded statement of a state witness into evidence without the benefit of cross-examination. Owen argues that the admission of the out of court testimonial deprived him of his constitutional right to confront the witnesses against him. *See Crawford v. Washington*, 541 U.S. 36 (2004).

The circumstances surrounding this case are as follows. Owen had a large blue tattoo on his left forearm at the time of trial. The state argued that while the perpetrator depicted in the Circle K surveillance video did not have a large tattoo on his left forearm, Owen had procured the large tattoo

since the time of robbery in order to mislead investigators and prevent identification.[16]

Following Owen's arrest, he was held in the Forrest County Regional Jail. Jeff Byrd, an identification technician at the jail, testified that he took note of Owen's tattoos during the intake process. Byrd testified that Owen had a small letter "K" on his left forearm. Byrd testified that he later received pictures from the district attorney's office that showed Owen has a new, larger tattoo on his left forearm.[17] Glen Nobles, a former staff sergeant at the Forrest County Regional Jail, testified that  Owen has a large "jailhouse" tattoo on his left forearm.[18] Gregory Smith, an inmate at the jail, testified that Owen had asked him for Vaseline or baby oil to put on a tattoo while the two were housed together. Smith testified that Owen told him that the tattoo that Byrd has a record of "could never  be identified" because of the new tattoo.[19]

The trial judge also allowed a tape-recorded statement of Charles Street, an inmate who had also been incarcerated at the Forrest County Regional Jail, to be played for the jury. Street was called to testify, but the record reflects that when he took the stand, he immediately began complaining of chest pains and shortness of breath. Street informed the judge that he was "dying from heart disease."[20] The judge dismissed the jury and called for the assistance of the nurse.[21] Later, Ruby Bunkheila, the staff nurse at Forrest County Regional Jail, confirmed that Street had a heart

---

[16]SCR [9-2] at 13-16.

[17]SCR [9-3] at 109-21.

[18]SCR [9-4] at 2-5.

[19]*Id.* at 21-26.

[20]*Id.* at 35.

[21]*Id.*

condition and been examined by a cardiologist. She further testified that Street suffered from high blood pressure and "significant blockage." She stated that testifying would worsen Street's condition, noting that his blood pressure was elevated.[22]

The Court then declared Street to be an unavailable witness under Mississippi Rule of Evidence 804(a)(4),[23] and allowed his pre-recorded statement to be admitted.[24] Street's unsworn statements alleged that Owen solicited his help in creating a false story about his tattoo to avoid in-court identification. Street was not subjected to either direct examination or cross examination.[25]

The Confrontation Clause prohibits out-of-court statements by witnesses that are testimonial, unless the witnesses are unavailable and defendants had a prior opportunity to cross-examine them. *Crawford*, 541 U.S. at 54. Confrontation Clause violations are subject to a harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681-82 (1986). Federal habeas relief may only be granted for a Confrontation Clause violation if it "had substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). In reviewing for harmless error, the Court considers a number of factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence of absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examinations otherwise permitted, and, of course, the overall strength of the

---

[22]*Id.* at 38-39.

[23]Rule 804(a)(4) provides "'Unavailability as a witness' includes situations in which the declarant: Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity . . ."

[24]SCR [9-4] at 48.

[25]*Owen*, So. 3d at 1149-50.

prosecution's case. *Van Ardsall*, 475 U.S. at 684.

The Mississippi Court of Appeals conceded that Street's pre-recorded statement was testimonial within the meaning of *Crawford*, and that he was not subject to cross-examination by Owen at or before trial. *Owen*, 43 So. 3d at 1154. Thus, under Rule 804(a)(4), the trial court erred in receiving Street's statement into evidence. However, applying the harmless error test, the appeals court concluded that the error at trial did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Fry*, 551 U.S. at 121-22. As outlined above, three other witnesses (Byrd, Nobles and Smith) testified that Owen obtained the large tattoo on his left forearm after being incarcerated in connection with the robbery. Moreover, Street's testimony concerned a tattoo that was not a factor of Owen's positive identification as the perpetrator by Holmes, which provided the evidentiary backbone of the prosecution. While Owen produced three witnesses that testified that he procured the tattoo years before[26], the Mississippi Court of Appeals found that the testimony of the three state witnesses were "sufficient to support the jury's verdict." *Owen*, 43 So. 3d at 1154. Finally, the state's case also rested on the consistent testimony of an eyewitness to the robbery. The undersigned is in agreement with the decision of the appeals court and concludes that the admission of Street's testimony did not involve an unreasonable application of federal law and does not provide an adequate basis for habeas relief.

### *Cell Phone Evidence*

---

[26]Carolyn Owen, who is Owen's mother, and Tonia Colbert, Owen's brother's girlfriend, were called as defense witnesses. They both testified that Owen received the tattoo on his left forearm in 2005. SCR [94] at 78-91. Brandon Grace, Owen's former co-worker, testified that Owen had the large tattoo in 2006. *Id.* at 96-99.

Finally, Owen argues that the exclusion of certain text messages as evidence and the trial court's refusal to allow the jury to examine the cell phone during deliberations constituted a violation of his due process rights. Specifically, Owen asserts that he was denied the opportunity to present a complete defense, and that excluding some but not all of the text messages violated the "doctrine of completeness."

Owen testified on his own behalf at trial, and described his version of events on the night of the robbery. The robbery took place at 1:00 a.m., but Owen testified that he had been asleep at that time, and had set his alarm for 1:20 a.m. so that he could meet with Melanie, his girlfriend.[27] Owen testified, based on a list of saved messages on his cell phone at the time, that he had sent a text message to Melanie at 1:34 a.m. The defense then offered and introduced the text message (stored in Owen's cell phone) into evidence.[28] This testimony was relevant to Owen's defense, as it contradicted what he was doing around the time of the robbery.

On cross-examination, the state attempted to discredit Owen by calling into question whether "Melanie" even really existed and how well Owen knew her.[29] On re-direct, defense counsel attempted to ask the defendant if the phone had any record of a response from Melanie. The state objected, stating that those text messages were not shown to him during discovery.[30] Outside the presence of the jury, Owen testified that the his phone showed that he received two responses from

---

[27]Owen testified that Melanie worked until 1:00 a.m. that night, and that was why they were meeting so late.

[28]SCR [9-4] at 403, 407.

[29]SCR [9-5] at 9-10.

[30]*Id.* at 16.

Melanie.[31] The state again objected, explaining:

> Your Honor, the nature of my objection is this: Counsel opposite brought the cell phone to me and said there was one thing in the cell phone that he wanted to introduce. And at the time he showed it to me, and it was that message that we looked at . . . . If they knew, and apparently they did, before they testified about these other messages, they had an obligation to tell me . . . This is a flagrant discovery violation.[32]

The court sustained the objection, stating "I believe that anything else in that phone was known prior to us being here this afternoon should have been disclosed prior to this afternoon."[33]

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). However, the Supreme Court has recognized that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). In *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013), the Supreme Court stated that it has rarely "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule." Furthermore, federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law. *Castillo v. Johnson*, 114 F.3d 218, 222 (5th Cir. 1998). An evidentiary error in a state trial does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the Due Process Clause. *Id.*

---

[31]*Id.* at 17-18.

[32]*Id.* at 467.

[33]*Id.* at 471.

Here, the trial judge determined that the text messages could not be admitted because they were not produced during discovery by the defense. The record in this case contains nothing to show that the exclusion of the two text messages rendered Owen's trial fundamentally unfair.[34]  Defense counsel had already established that Owen had attempted to contact Melanie at 1:34 a.m. on the night of the robbery, and while the response messages would have indeed been relevant, nothing indicates that they were highly probative of Owen's guilt or innocence. Because Owen has failed to demonstrate a trial court error presenting a constitutional basis for habeas relief, his request for habeas relief in this regard should be denied.

## **RECOMMENDATION**

For the reasons stated above, it is the recommendation of this court that Davis's Petition [1] for writ of habeas corpus be dismissed with prejudice.

## **NOTICE OF RIGHT TO OBJECT**

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with

---

[34]In fact, the exclusion was not an error under state law. Pursuant to the Mississippi Uniform Circuit and County Court Rule 9.04(A), reciprocal discovery requires disclosure of any evidence relevant to the case or which may be offered into evidence. URCCC 9.04(A)(5). Although Rule 9.04 imports no per se rule of inadmissability for evidence in violation of reciprocal discovery rules, *Galloway v. State*, 604 So. 2d 735, 739 (Miss. 1992), trial judges have wide discretion when faced with a discovery violation. Where a defendant violates a discovery obligation, a court may utilize a wide array of sanctions, one of which may include exclusion of the evidence. *Coates v. State*, 495 So. 2d 464, 466 (Miss. 1986)

instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 25th day of November, 2014.

s/ Michael T. Parker
United States Magistrate Judge

17